UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
STAR HYUNDAI, LLC,

<table>
<tr><td></td><td></td></tr>
</table>

|  |  |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| -against- | |
| HYUNDAI MOTOR AMERICA and GENESIS MOTOR AMERICA LLC, | 25 Civ. 3622 (OEM) (VMS) |
| Defendants. | |

------------------------------------------------------------ x

**Vera M. Scanlon, Chief United States Magistrate Judge:**

Presently before the Court is the motion of Defendants Hyundai Motor America

("HMA") and Genesis Motor America LLC ("GMA" and, collectively with HMA,

"Defendants") to dismiss Count VI of the amended complaint,[1] for tortious interference with

business relations, filed by Plaintiff Star Hyundai, LLC ("Plaintiff").  ECF No. 35 (Defendants'

partial motion to dismiss); see also ECF No. 36 (Defendants' memorandum in support).  Plaintiff

opposed.  See ECF No. 37.  Defendants replied.  See ECF No. 38.  For the reasons discussed

below, the Court respectfully recommends that the motion be granted and that this claim be

dismissed, with leave to replead granted as to this claim only.

**I.      Standard**

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert the defense of failure to

state a claim upon which relief can be granted by motion.  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[1] Defendants filed their motion prior to the filing of the amended complaint, see ECF No. 40-1 (Plaintiff's amended complaint), but, pursuant to the undersigned's April 1, 2026 Order, "[t]he Court deem[ed] the pending motion to dismiss to move to dismiss Count VI of the Amended Complaint, which is now the operative complaint," 4/1/2026 Order (citation omitted).

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court considering a motion to dismiss a complaint, in whole or part, for failure to state a claim must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," id. at 678, or "threadbare recitals of a cause of action's elements," id. at 663.  "Importantly, the 'plausibility' standard applies only to a complaint's factual allegations."  Mayor & City Council of Baltimore, Md. v. Citigroup, Inc., 709 F.3d 129, 135 (2d Cir. 2013).

## II.    Facts

The relevant facts recited herein are drawn from the amended complaint and are assumed to be true for the purposes of this motion.

Plaintiff is a car dealership located in Bayside, New York, franchised by Defendants. See ECF No. 40-1 ¶ 25.  Plaintiff's three LLC members are John Koufakis, Michael Koufakis and Steven Koufakis, each of which has an equal interest in Plaintiff, with Steven Koufakis serving in a capacity as a "Dealer Principal" or similar role for purposes of Plaintiff's respective dealer agreements with Defendants.  Id. ¶¶ 26-28 (quotations omitted).

On or about May 20, 2024, the majority of Plaintiff's members passed two resolutions, one of which "concerned actions of the members," and the other of which "concerned replacing Steven Koufakis as the Dealer Principal with John Koufakis."  Id. ¶ 32.  Plaintiff requested that Defendants recognize the replacement, which they refused to do, claiming "that they could withhold consent to the request" and seeking "evidence of authorization for the change under Star's operating agreement and 'consent of all owners,'" which is purportedly not required by Plaintiff's operating agreement or the dealer agreements.  Id. ¶¶ 33-38.

2

On or about December 2, 2024, Defendants sent letters to Plaintiff "alleging it was in breach" of their respective dealer agreements, id. ¶ 39, entitling Defendants to terminate the dealer agreements on sixty-days' notice, in view of the alleged dispute, disagreement or controversy among Plaintiff's members, see id. ¶¶ 40-43, 45, "which, in the sole opinion of [Defendants], adversely affects [Plaintiff's] operations or the interests of [Plaintiff] or [Defendants]," id. ¶ 42; see id. ¶ 55. More specifically, Defendants contended that the breach arose from "the request by the majority of the members of Star to replace Steven Koufakis as Dealer Principal," and doing so without Defendants' consent; "allegations made by Steven Koufakis through his personal attorney in a letter dated September 10, 2024"; and "a lawsuit commenced by Michael Koufakis, John Koufakis, Star, and other plaintiffs against Steven Koufakis and Eileen Koufakis in the Nassau County Supreme Court." Id. ¶ 44; see id. ¶ 46, 55. Plaintiff "had not removed Steven Koufakis as Dealer Principal as of the date of the [letters]." Id. ¶ 47; see id. ¶ 55. Defendants proposed curative measures to be taken within thirty days. See id. ¶¶ 51-55.

On December 31, 2024, Plaintiff responded to Defendants' letters, disputing their claims of breach and requesting an additional sixty days to respond thereto. See id. ¶ 59. On January 21, 2025, Defendants granted Plaintiff an additional thirty days to respond. See id. ¶ 60. On February 20, 2025, Defendants sent additional letters to Plaintiff "claiming that the time to respond had passed." Id. ¶ 61. On March 7, 2025, Plaintiff responded, seeking "confirmation that [Defendants] would act in good faith to resolve the parties' disputes." Id. ¶ 62. On April 25, 2025, Defendants sent termination notices to Plaintiff, in view of Plaintiff's purported failure to cure the breaches. See id. ¶ 63-67.

As relevant to this motion, Plaintiff had contacted Hyundai Capital America ("Hyundai

3

Capital") to negotiate a floor-plan line of credit,[2] which Plaintiff and Hyundai Capital negotiated and as to which they reached an agreement regarding "the terms of the floor plan," with a closing scheduled through which "Hyundai Capital would pay off Star's existing floor plan." Id. ¶¶ 115-17. But, "days before the closing, Hyundai Capital informed Star that it would not move forward with the floor plan financing unless both [Defendants] rescinded the" termination notices." Id. ¶ 118. Plaintiff alleged that Defendants "interfered with Star's business relationship with Hyundai Capital through their control of Hyundai Capital as a captive finance source so that Hyundai Capital refused to proceed with providing a floor plan to Star." Id. ¶ 120. In doing so, Defendants, on information and belief, "acted with the sole purpose of harming Star or by using unlawful means, such as using their position of power over Hyundai Capital as their captive finance source to, on information and belief, force Hyundai Capital to terminate its agreement with Star to provide floor plan financing." Id. ¶ 121. Plaintiff's "business relationship with Hyundai Capital has therefore been harmed." Id. ¶ 122.

## III.    Discussion

"In order to state a claim for tortious interference with prospective business relations, a plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" Von Rohr Equip. Corp. v. Tanner Bolt & Nut Corp., No. 17 Civ.

---

[2] A floor-plan line of credit "is a line of credit a dealer can use to purchase vehicles from a manufacturer," id. ¶ 112, through which "the floor plan provider will pay for the vehicle by placing the vehicle on the dealer's floor plan line of credit," id. ¶ 113, and on which the dealer pays interest, see id. ¶ 114.

2913 (NGG) (RER), 2017 WL 5184676, at *7 (E.D.N.Y. Nov. 7, 2017) (quoting Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006)).[3]

### A.    Business Relationship Between Plaintiff And Hyundai Capital

Plaintiff sufficiently pleaded that it had a business relationship with Hyundai Capital.  It alleges that it "had a business relationship with Hyundai Capital, not only through the possible assumption of the floor plan, but also as a source of financing for sold and leased vehicles."  ECF No. 40-1 ¶ 119.  Neither party disputes the sufficiency of the pleading as to this element.[4]

### B.    Defendants' Knowledge And Intentional Interference With The Relationship

New York law dictates that in a complaint alleging tortious interference, including interference with prospective contractual relations and business relationships, "the relationships must be specified, as must the defendants' knowledge and the interference."  Burns Jackson

---

[3] The parties do not brief the choice-of-law issue as to Plaintiff's state law claim for tortious interference with business relations.  Nonetheless, given that both Plaintiff and Defendants rely upon New York law in their arguments as to this claim, see ECF No. 40-1 ¶ 1; ECF No. 36 at 5-8, they have implicitly consented to application of New York law to this claim.  See Ezrasons, Inc. v. Travelers Indem. Co., 89 F.4th 388, 394 n.5 (2d Cir. 2023).

[4] It is not clear that, should this claim proceed, that Hyundai Capital would constitute a "third party," as it is the "captive finance source" of Defendants, and therefore it "is, directly or indirectly, owned, operated or controlled, in whole or in part," by Defendants.  N.Y. Veh. & Traf. Law § 462(16).  "'It is well established that only a stranger to the contract, such as a third party, can be liable for tortious interference.'  Parent companies are not 'third parties' to the contracts of their subsidiaries."  Malewich v. Indian Harbor Ins. Co., No. 24 Civ. 7406 (FB) (VMS), 2026 WL 482626, at *2 (E.D.N.Y. Feb. 20, 2026) (citation omitted) (quoting Koret, Inc. v. Christian Dior, S.A., 554 N.Y.S.2d 867, 869 (1st Dep't N.Y. App. Div. 1990).  Courts have dismissed claims of tortious interference with contract under similar circumstances.  See, e.g., Multi-Juice, S.A. v. Snapple Beverage Corp., No. 02 Civ. 4635 (RPP), 2003 WL 1961636, at *5 (S.D.N.Y. Apr. 25, 2003) (dismissing tortious interference claim because defendant "could not tortiously interfere with the distribution agreement" of its wholly owned subsidiary).  But see Momentive Performance Materials USA, Inc. v. AstroCosmos Metallurgical, Inc., No. 107 Civ. 567 (FJS) (DRH), 2009 WL 1514912, at *8 (N.D.N.Y. June 1, 2009) ("there is no legal support for the proposition that the mere assertion of the economic justification defense or the fact that Defendant CLEGC and Defendant AstroCosmos are affiliated companies, as a matter of law, defeats Plaintiff's tortious interference claims").

Miller Summit & Spitzer v. Lindner, 452 N.Y.S.2d 80, 93 (2d Dep't N.Y. App. Div. 1982) (finding that a lower court erred in denying a motion to dismiss where "the plaintiff's allegations are totally conclusory and lacking in these elements"), aff'd, 451 N.E.2d 459 (N.Y. 1983).

First, Plaintiff does not specifically allege that Defendants had knowledge of Plaintiff's business relationship with Hyundai Capital.  Although the knowledge of a subsidiary may be imputed to its parent company under some circumstances, the minimal allegations in Plaintiff's complaint are insufficient to impute Hyundai Capital's knowledge of Plaintiff's business relationship to HMA.  See Defer LP v. Raymond James Fin., Inc., 654 F. Supp. 2d 204, 218 (S.D.N.Y. 2009) (noting that there is "no . . . rule requiring the imputation of a subsidiary's knowledge to its parent, at least where there are no allegations as to the existence of an agency relationship or other foundation on which to premise the parent's vicarious liability").

Second, Plaintiff does not identify the alleged interference undertaken by Defendants. The complaint alleges that Defendants "us[ed] their position of power over Hyundai Capital as their captive finance source to, on information and belief, force Hyundai Capital to terminate its agreement with Star."  ECF No. 40-1 ¶ 121. The complaint does not identify any act undertaken by Defendants, but only the consequences of the implied action—forcing Hyundai Capital to act to terminate the agreement.

The complaint is vague as to whether the interference claim stems from Defendants' issuance of the termination notices or from some unspecified, direct interaction between Defendants and Hyundai Capital whereby Defendants actively directed Hyundai Capital to terminate its relationship with Plaintiff.  In its opposition, Plaintiff asserts that the alleged interference was not the issuance of the termination notices themselves, but "conduct directed at" Hyundai Capital: "Star alleges tortious interference against HMA and GMA because of their

6

targeted conduct directed at their captive finance source, Hyundai Capital, and not because they issued wrongful Termination Notices."  ECF No. 37 at 6.  Plaintiff claims that Defendants "force[d]," "instruct[ed]," "induced," and "coerc[ed]" Hyundai Capital to back out of its deal with Plaintiff.  Id. at 5-7.  Even if the Court were to consider statements made in the memorandum of law as helpful in interpreting the pleadings, Plaintiff does not provide specific allegations about what this alleged interaction involved.  As Plaintiff has not "specified" the interference that allegedly took place, Burns Jackson Miller Summit & Spitzer, 452 N.Y.S.2d at 93, its "conclusory allegations are insufficient to state a cause of action to recover damages for tortious interference with prospective business relations," Nero v. Fiore, 86 N.Y.S.3d 96, 99 (2d Dep't N.Y. App. Div. 2018).

    **C.**       **Defendants' Crime, Independent Tort, Or Action Solely Out of Malice**

Of the four elements of tortious interference in business relations, "the third element— which requires that a defendant act with a wrongful purpose or utilize wrongful means— distinguishes tortious interference with business relations from tortious interference with contract."  Glob. Packaging Servs., LLC v. Glob. Printing & Packaging, 248 F. Supp. 3d 487, 494 (S.D.N.Y. 2017) (citing Carvel Corp. v. Noonan, 818 N.E.2d 1100, 1103 (N.Y. 2004)).  This requirement "makes alleging and proving a tortious interference claim with business relations 'more demanding' than proving a tortious interference with contract claim."  Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008) (quoting Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 406 N.E.2d 445, 449 (N.Y. 1980)).

"Wrongful means include physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure.  More than simple persuasion is required."  Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 214-15 (2d Cir. 2002).  Generally, "'a

defendant's conduct must amount to a crime or an independent tort' in order to amount to tortious interference with a prospective economic advantage." Hernandez v. Kwiat Eye & Laser Surgery, PLLC, No. 23 Civ. 7679, 2024 WL 5116365, at *4 (2d Cir. Dec. 16, 2024) (quoting Carvel Corp., 818 N.E.2d at 1103). "And so, '[c]onduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts or other nonbinding economic relations.'" Id.

An exception to this rule applies "'where a defendant engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs' — in other words, where a defendant acts with malice." Travelex Currency Servs. v. Puente Enters., Inc., 449 F. Supp. 3d 385, 400 (S.D.N.Y. 2020) (quoting 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 262 (2d Cir. 2015)). "But this exception is narrow: When a defendant has acted with a permissible purpose, such as 'normal economic self-interest,' wrongful means have not been shown, even if the defendant was 'indifferent to the [plaintiff's] fate.'" 16 Casa Duse, LLC, 791 F.3d at 262 (alteration in original) (quoting Carvel Corp., 818 N.E.2d at 1103).

The complaint states that Defendants "acted with the sole purpose of harming Star or by using unlawful means." ECF No. 40-1 ¶ 121. The complaint describes a fraught relationship between Plaintiff and Defendants, stating that it "soured in recent years, with [Defendants] taking increasingly hostile positions to [Plaintiff]'s detriment," id. ¶ 30; that Defendants "have made it clear that they want to get rid of [Plaintiff] as a dealer," id. ¶ 31; and that "their animosity towards [Plaintiff] culminated with them notifying Star of their intent to terminate Star's franchises," id.

Plaintiff elaborates in its opposition that Defendants interfered with its business relations using "unlawful means, including leveraging the captive finance source relationship contrary to

the Dealer Act's constraints." ECF No. 37 at 3. Specifically, Plaintiff cites New York Vehicle and Traffic Law § 463(2)(u). ECF No. 37 at 9. This statute provides:

> It shall be unlawful for any franchisor, notwithstanding the terms of any franchise contract . . . [t]o use any subsidiary corporation, affiliated corporation, captive finance source or any other controlled corporation, partnership, association or person to accomplish what would otherwise be unlawful conduct under this article on the part of the franchisor.

Although this may allege that Defendants' conduct with respect to Hyundai Capital constituted a violation of Vehicle and Traffic Law § 463(2)(u), Plaintiff has not alleged that such conduct involved "physical violence, fraud, misrepresentation, civil suits, [or] criminal prosecutions," Lombard, 280 F.3d at 214, or otherwise "amount[ed] to a crime or an independent tort," Hernandez, 2024 WL 5116365, at *4 (quoting Carvel Corp., 818 N.E.2d at 1103).

Plaintiff has not shown that Defendants acted solely to harm Plaintiff, or "with malice," Travelex Currency Servs., 449 F. Supp. 3d at 400. In its opposition, Plaintiff suggests that the true aim of the alleged interaction with Hyundai Capital was to "choke [Plaintiff]'s lifeblood financing in service of an unlawful termination." ECF No. 37 at 9. Thus, Plaintiff itself surmises that Defendants' alleged interaction with Hyundai Capital was part of the broader effort to terminate Plaintiff as a franchisee. Plaintiff's own complaint shows other possible motives beyond pure malice that drove the termination. In particular, the termination was based on a section of the Hyundai Dealer Agreement that gave Defendants the right to terminate the franchise due to any "dispute, disagreement or controversy between or among partners, managers, officers or stockholders of [Plaintiff] which, in the sole opinion of [Defendants], adversely affects [Plaintiff's] operations or the interests of [Plaintiff] or [Defendants]." ECF No. 40-1 ¶ 43; see id. ¶ 55. Thus, as Defendants point out, "[t]he Complaint itself raises the inference that Defendants' conduct was at least partially motivated by 'economic

9

considerations and self-interest,' such as mitigating the adverse effects arising from [Plaintiff]'s messy ownership disputes." ECF No. 36 at 8.

Thus, Plaintiff has not alleged that Defendants acted solely out of malice; rather, the complaint itself suggests that Defendants' "economic self-interest" was also at play. See Premier Med. Sys., LLC v. NeuroLogica Corp., No. 21 Civ. 1337 (GHW), 2022 WL 603999, at *12 (S.D.N.Y. Feb. 28, 2022) (dismissing claim of tortious interference with prospective business relations because "by Plaintiff's own allegations, Defendant acted in its own economic self-interest—and not for the sole purpose of harming Plaintiff"). Because the complaint itself pleads that the attempted termination—and thus the interaction with Hyundai Capital as well— was driven at least in part by "normal economic self-interest," 16 Casa Duse, LLC, 791 F.3d at 262, and due to the lack of any other factual support for the allegation of malice on the part of Defendants, Plaintiff has failed to allege that Defendants acted solely out of malice, see Premier Med. Sys., LLC, 2022 WL 603999, at *12.

### D.  Injury To Plaintiff Caused By Defendants' Interference

Plaintiff sufficiently pleaded this element of the claim. Plaintiff alleged that its "business relationship with Hyundai Capital has . . . been harmed." ECF No. 40-1 ¶ 122. Neither Plaintiff nor Defendants disputes that Hyundai Capital's decision not to proceed with Plaintiff's floor plan financing is an injury.

## IV.  Conclusion

For the reasons discussed above, the Court respectfully recommends that Defendants' motion be granted, that Plaintiff's claim for tortious interference with business relations be dismissed, but that Plaintiff be granted leave to replead this claim if it can do so consistent with this report and recommendation.

## V.      Objections

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen days of service.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation by both the District Court and the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has 'adopted the rule that when a party fails to object timely to a magistrate [judge]'s recommended decision, it waives any right to further review of that decision'" (quoting Wesolek v. Canadair Ltd., 838 F.2d 55, 58 (2d Cir. 1988))).

Dated: Brooklyn, New York
        July 9, 2026

*Vera M. Scanlon*
        VERA M. SCANLON
        United States Magistrate Judge

11